

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 26, 2021**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Abri Health Services, LLC, *et al.*,[1] | § | Case No. 21-30700 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
## SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

Upon the: (i) filing by the above-captioned debtors and debtors in possession (the

"**Debtors**") in the above-captioned subchapter V cases (the "**Cases**") of the: (a) *Second Amended*

*Subchapter V Plan of Reorganization* [Docket No. 226] (as amended, supplemented, and/or

modified, the "**Plan**")[2] on October 22, 2021, a copy of which is attached hereto as **Exhibit 1**, which

Plan amends and replaces the previously filed plans of reorganization at Docket Nos. 173 and 200;

---

[1] The Debtors in these subchapter V cases, along with the last four digits of each Debtor's federal tax identification number, are Abri Health Services, LLC (3319) and Senior Care Centers, LLC (8550).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

(b) the *Declaration of James Sean McGuire in support of Confirmation of Second Amended Subchapter V Plan of Reorganization* [Docket No. 224] (the "**Balloting Declaration**"); and (c) the *Declaration of Anthony Arnaudy, Chief Financial Officer of Debtors, in Support of the Second Amended Subchapter V Plan of Reorganization* [Docket No. 239] (the "**Confirmation Declaration**" and with all of these items being hereinafter collectively referred to as the "**Plan Filings**"); (ii) the Court having: (a) reviewed the Plan Filings, (b) conducted the Confirmation Hearing, (c) heard the statements, representations, and arguments of counsel for Debtors, the Subchapter V Trustee (as defined below), and evidence presented or proffered at the Confirmation Hearing, (d) considered the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding Confirmation of the Plan, the withdrawal and resolution of any and all objections or informal comments to the Plan, the support of the Subchapter V Trustee and other constituents, and the evidence regarding Confirmation of the Plan; and (iii) Debtors, through their solicitation agent, Stretto, Inc. ("**Stretto**"), having distributed Solicitation Packages to the Holders of Claims entitled to vote on the Plan, as appropriate and required by the Bankruptcy Rules, the Court hereby FINDS as follows:

A.　　Findings and Conclusions. The findings and conclusions set forth herein and on the record during the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

B.　　Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue

in this judicial district was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and this Court has the exclusive jurisdiction to consider Confirmation of the Plan and enter a final order with respect thereto.

C.   <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Cases maintained by the Clerk of the Court and considers all evidence and arguments made, proffered, or adduced at the various hearings held before this Court during the pendency of the Cases.

D.   <u>Burden of Proof</u>. The Debtors have the burden of proving the elements of Bankruptcy Code section 1191 and the applicable elements of section 1129(a) by a preponderance of the evidence. The Debtors have met their burden with respect to all applicable elements under Bankruptcy Code sections 1191 and 1129.

E.   <u>Subchapter V of Chapter 11 Petitions</u>. On the Petition Date, the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtors have continued as debtors in possession pursuant to Bankruptcy Code sections 1108 and 1184.

F.   <u>Subchapter V Trustee</u>. On April 21, 2021, the Office of the United States Trustee filed the *Notice of Appointment of Subchapter V Trustee* [Docket No. 32], appointing Mark Weisbart as the subchapter V trustee pursuant to Bankruptcy Code section 1183(a) and 28 U.S.C. § 586(a)(3).

G.   <u>Solicitation and Tabulation</u>. On September 24, 2021, in accordance with applicable sections of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable laws in connection therewith, the Debtors caused Stretto to transmit and serve solicitation materials, including a copy of the Plan, a form of ballot ("**Ballot**"), and notice of the confirmation hearing to

2

occur on October 26, 2021 at 1:00 p.m. CT ("**Confirmation Hearing Notice**" and together with the Plan and Ballot, a "**Solicitation Package**") on the Holders of Claims in Class 3 (the "**Voting Class**"). Under Bankruptcy Code section 1126(f), Debtors were not obligated to solicit votes from Holders of Claims and Interests that are not Impaired and deemed to accept the Plan and, the Court finds that Classes 1, 2, and 4 are not Impaired under the Plan, and, thus, deemed to have accepted the Plan.

H.     Notice. On September 29, 2021, the Court entered its *Order Providing Notice of Confirmation Hearing and Establishing Key Deadlines* [Docket No. 202], which approved the Debtors' form Confirmation Hearing Notice and set key deadlines, including, without limitation, October 20, 2021 at 5:00 p.m. CT as the deadline to object to Confirmation of the Plan and the deadline to vote on the Plan.

I.     Transmittal and Mailing of Materials; Notice. The transmittal and service of Solicitation Packages, through Stretto, was conducted in compliance with applicable Bankruptcy Rules. As evidenced by Stretto's *Certificate of Service* [Docket No. 201] and Debtors' *Certificate of Service of Order Providing Notice of Confirmation Hearing and Establishing Key Deadlines* [Docket No. 207], Debtors provided due, proper, timely, adequate, and sufficient notice to all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan), in accordance with the Bankruptcy Rules, and all creditors and parties-in-interest have had ample opportunity to appear and be heard with respect thereto, and no other or further notice is required.

J.     Good Faith. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, and all other applicable provisions, rules, and statutes such that this Court finds that

Debtors, Debtors' professionals, and all of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, advisors, and successors or assigns, have acted in good faith within the meaning of Bankruptcy Code sections 1125(e) and 1129(a)(3) and are, thus, entitled to the protections afforded by Bankruptcy Code section 1125(e).

K.     <u>Voting Declaration</u>. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Balloting Declaration, the Voting Class accepted the Plan.

L.     <u>Proper Classification of Claims</u>. The Plan adequately and properly identifies and classifies all Claims and Interests. Pursuant to 11 U.S.C. § 1122(a), the Claims and Interests placed in each Class are substantially similar to other Claims and Interests in each such Class. Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of Claims and Interests under the Plan and such classification does not unfairly discriminate among Holders of Claims and Interests. The Plan's classification of Claims and Interests is reasonable.

M.     <u>Specified Unimpaired Classes</u>. The Plan complies with Bankruptcy Code section 1123(a)(2) by specifying all classes or Claims or Interests that are not Impaired under the Plan.

N.     <u>Specified Treatment of Impaired Classes</u>. The Plan complies with Bankruptcy Code section 1123(a)(3) by specifying the treatment of all classes of Claims or Interests that are Impaired under the Plan.

O.     <u>No Discrimination</u>. The Plan complies with Bankruptcy Code section 1123(a)(4) by providing for equal treatment of Claims or Interests in each respective Class.

P.     <u>Implementation of the Plan</u>. Article VII of the Plan provides adequate means for implementation in accordance with Bankruptcy Code section 1123(a)(5).

4

Q.     No Material Plan Modifications. The Court finds and concludes that any modifications to the Plan set forth in this Confirmation Order or otherwise (collectively, the "**Plan Modifications**") do not have any material adverse impact on any interested party and are appropriate under the circumstances.

R.     Releases, Exculpations, and Injunctions. Pursuant to Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts to be enjoined by, and identifies the entities that are subject to releases and injunctions provided under, the Plan, including without limitation, Article VIII thereof. The Court finds that each release, exculpation, and injunction provision set forth in the Plan is: (i) within the jurisdiction of the Court under 28 U.S.C. §§ 1334; (ii) essential to the implementation of the Plan pursuant to Bankruptcy Code section 1123(a)(5) and warranted by the circumstances of the Cases; (iii) an integral element of the Plan; (iv) the product of an arms-length transaction and a critical element of obtaining the support of the various constituencies for Plan support; (v) fair, equitable, and in the best interests of Debtors' estates and creditors; (vi) important to the overall objectives of the Plan, including without limitation, to finally resolve claims against or among key parties in the Cases; and (vii) consistent with Bankruptcy Code sections 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

S.     Rule 9019 Compromise and Settlement. The Court finds that the agreement set forth in that certain Compromise and Release Agreement (the "**Settlement**"), dated August 24, 2021, which the Court approved in its *Order (I) Approving Settlement Agreement, (II) Authorizing the Debtors to Consummate the Settlement, Execute Transaction Documents, and Perform Obligations of the Settlement, and (III) Granting Related Relief* [Docket No. 194] (the "**Rule 9019 Order**") is appropriately described and incorporated into the Plan, is reasonable and appropriate

5

under the circumstances of the Cases and satisfies Bankruptcy Code section 1123 and Bankruptcy Rule 9019.

T.      <u>Assumption and Rejection of Executory Contracts</u>. In accordance with Bankruptcy Code section 1123(b)(2), upon entry of the Confirmation Order, Debtors will be conclusively deemed to have assumed all Executory Contracts not expressly rejected prior to the Effective Date or as listed in the Plan Supplement, pursuant to Article V of the Plan or another order of the Court. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, all guaranties guarantying obligations and liabilities of a Debtor or a Reorganized Debtor under any of the Facilities Leases shall remain and continue after the Effective Date and shall in no way be impacted or diminished by any provision of the Plan.

a.      *Annaly*. The Debtors acknowledge they are in default of the Annaly Lease due to the inability to meet the Net Worth requirement under Exhibit "I" of the Annaly Lease. Notwithstanding anything to the contrary contained in the Plan, including Articles V and VIII, or this Confirmation Order: (i) the Debtors' obligation to satisfy the Net Worth requirement of the Annaly Lease after the Effective Date is not waived, released, discharged, or satisfied, and remains enforceable; and (ii) Annaly, and any successor to Annaly, retains all rights and remedies with respect to, and is in no way estopped or enjoined from, enforcement of the Net Worth requirement of the Annaly Lease against the Reorganized Debtors, any successors thereto, including any transferee or assignee, or any other third party. Annaly is entitled to file an Administrative Claim for their attorneys' fees, and Annaly's current total attorneys' fees are in excess of $36,000 and would increase through confirmation. Annaly and the Debtors have negotiated a settlement of all of Annaly's attorney's fees through confirmation. In lieu of prepping and filing an

6

Administrative Claim, Annaly will have an Allowed Administrative Claim for $25,000 payable by the Debtors on the Effective Date.

U. <u>Principal Purpose of the Plan</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. The Plan, thus, satisfies the requirements of Bankruptcy Code section 1129(d).

V. <u>Subchapter V Plan Deadline</u>. The Plan complies with Bankruptcy Code section 1189 because it was timely filed within the extended deadline of July 22, 2021, which the Court approved on July 15, 2021.

W. <u>Subchapter V Plan Content</u>. The Plan complies with Bankruptcy Code section 1190(1) because Article I provides the following mandatory content: (i) a brief history of Debtors' business operations; (ii) a liquidation analysis; and (iii) projections with respect to the Debtors' ability to make payments under the Plan.

X. <u>Satisfaction of Confirmation Requirements</u>. For the reasons set forth in the Confirmation Declaration, Debtors have satisfied and the Plan complies with, all applicable provisions of Bankruptcy Code section 1129(a), which are expressly made applicable by Bankruptcy Code section 1191(a) and, even if the Plan could not be confirmed as a consensual plan, the Debtors have also satisfied the requirements under Bankruptcy Code section 1191(b) because the Plan does not discriminate unfairly and is fair and equitable.

a. The Court finds that the release provisions required under the Settlement approved by the Rule 9019 Order, are appropriate and necessary to effectuate the Plan, and based on the facts and circumstances of these Cases, are not in conflict with or in violation of any provision under the Bankruptcy Code.

7

b. The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by Bankruptcy Code section 1129(a)(2).

c. The Plan was proposed in good faith and not by any means forbidden by law, and, the Debtors have satisfied the good faith requirement under Bankruptcy Code section 1129(a)(3).

d. Any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or is subject to the approval of, the Court as reasonable, and, thus, the Plan complies with section 1129(a)(4).

e. Under Article VII of the Plan, the Debtors have dsclosed that the Debtors' current Board and officers will continue as the Board and officers of the Reorganized Debtors. Accordingly, the Plan complies with Bankruptcy Code section 1129(a)(5).

f. Bankruptcy Code section 1129(a)(6) is inapplicable.

g. The Debtors' evidence, including the Liquidation Analysis attached as Exhibit B to the Plan, demonstrates that each Class under the Plan is receiving not less than such Class would have received if the Debtors had liquidated under Chapter 7 of the Bankruptcy Code. Accordingly, the Plan complies with Bankruptcy Code section 1129(a)(7).

h. The only Unimpaired Class under the Plan with the right to vote, Class 3, voted to accept the Plan. Classes 1, 2, and 4 are not Impaired under the Plan and, thus, are deemed to have accepted the Plan. Thus, Bankruptcy Code section 1129(a)(8) has been satisfied.

80471185.1

i. To the extent that Bankruptcy Code section 1129(a)(9) applies, the Plan may be confirmed pursuant to the "special rule" under Bankruptcy Code section 1191(e), which provides in pertinent part that a subchapter V "plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) . . . may be confirmed under section (b) of" Bankruptcy Code section 1191.

j. The Voting Class has accepted the Plan.

k. Confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors, and, thus, Bankruptcy Code section 1129(a)(11) has been satisfied.

l. Pursuant to § 4(b)(3) of the Small Business Reorganization Act of 2019, the Debtors are not required to make quarterly payments to the U.S. Trustee in accordance with 28 U.S.C. § 1930(a)(6)(A). Thus, to the extent Bankruptcy Code section 1129(a)(12) applies, the Plan may be confirmed.

m. Bankruptcy Code sections 1129(a)(13)-(16) do not apply to the Plan.

n. The Plan does not unfairly discriminate and is fair and equitable, within the meaning of Bankruptcy Code section 1191.

(i) Bankruptcy Code section 1191(c)(1) is satisfied because the Plan satisfies the requirements under Bankruptcy Code section 1129(b)(2)(A) as to Allowed Secured Claims.

(ii) As of the Effective Date of the Plan, the Plan provides that all of Debtors' projected Disposable Income, as defined by Bankruptcy Code section 1191(d), during the 3-year commitment period will be applied to make payments under the Plan.

9

(iii)    There is a reasonable likelihood that Debtors will be able to make all of the payments under the Plan.

(iv)    The Plan Provides appropriate remedies to protect Holders of Clams and Interests in the event that Plan payments are not made.

Y.    <u>Requirements for Confirmation Are Satisfied</u>. Debtors have satisfied all of the requirements for Confirmation of the Plan under Bankruptcy Code section 1191. Confirmation of the Plan is in the best interests of Debtors' estates, Debtors' creditors, and all other parties in interest.

Now, THEREFORE, in view of the foregoing FINDINGS, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1.    <u>Incorporation of Findings</u>. The foregoing findings are hereby incorporated into and form an integral part of this Confirmation Order.

2.    <u>Notice of Confirmation Hearing</u>. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

3.    <u>Solicitation</u>. The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4.    <u>Plan Modifications</u>. The Plan Modifications set forth in this Confirmation Order or otherwise do not have any material adverse impact on any interested party, and may be implemented without further notice, hearing, or solicitation, and are appropriate under the circumstances. In accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019, all

Holders of Claims who voted to accept the Plan are deemed to have accepted the Plan as modified hereby.

5. <u>Objections</u>. For the reasons stated on the record, any objections to Confirmation of the Plan that have not been withdrawn, resolved, waived, or settled are overruled on the merits.

6. <u>Plan Confirmation</u>. The Plan is hereby CONFIRMED in its entirety under Bankruptcy Code section 1191(a).

7. <u>Approval of Plan Releases, Exculpations, and Injunctions.</u> Each release, exculpation, and injunction provision set forth in the Plan is hereby approved; *provided, however*, that nothing contained in the Plan or this Confirmation Order shall be deemed to impact, modify or otherwise amend or alter the terms of the Settlement Agreement and the Rule 9019 Order, which shall remain controlling; *provided, further*, that any releases provided under the Settlement Agreement and the Rule 9019 Order shall supersede any protections, injunctions, or releases provided to any Protected Party under Article VIII.C of the Plan. For the avoidance of doubt, any and all claims and/or potential claims of TXMS, LTC Properties, Inc., Winnie-Stowell Hospital District, a governmental entity and political subdivision of the State of Texas and HMG Healthcare, LLC are controlled by the terms and conditions of the pursuant to the Rule 9019 Order and the Settlement Agreement, both of which are incorporated herein.

8. <u>Assumption and Rejection of Executory Contracts</u>. In accordance with Bankruptcy Code section 1123(b)(2), upon entry of the Confirmation Order, Debtors will be conclusively deemed to have assumed all Executory Contracts not expressly rejected prior to the Effective Date or listed in the Plan Supplement, pursuant to Article V of the Plan or another order of the Court.

9. <u>Rejection Damage Claim and Related Claim Bar Date</u>. A proof of claim arising from the rejection of an Executory Contract or Unexpired Lease (such claim, a "**Rejection**

**Damage Claim**") must be filed with the Court and served upon counsel for Debtors on or before the date that is thirty (30) days after the later of (i) the date of entry of a Confirmation Order with respect to the Plan; or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease (the "**Rejection Damage Claim Bar Date**"). Any and all Rejection Damage Claims not filed on or before the Rejection Damage Claim Bar Date shall be automatically disallowed and forever barred in their entirety and shall not be enforceable against Debtors, Debtors' estates, or their respective properties or interests in property as agents, successors, or assigns.

10. <u>Binding Effect</u>. Effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, Bankruptcy Code section 1141, the Plan and this Confirmation Order shall be binding on: (a) Debtors; (b) all Holders of Claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such Holders of Claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan. Subject to paragraph 12 of this Confirmation Order, the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Additionally, entry of this Confirmation Order is deemed consent by any counterparty to an Executory Contract or Unexpired Lease to the assignment of Debtors' right, title, and interest in such Executory Contract or Unexpired Lease, and as evidence of such consent, a copy of this Confirmation Order may be filed with any and all applicable state, federal, or other governmental or regulatory authority and/or in any applicable governmental record.

11. <u>Allowed Administrative Claim of Annaly</u>. On the Effective Date, Debtors shall pay $25,000 to Annaly in full satisfaction of its Allowed Administrative Claim for attorney's fees incurred through the date of entry of this Confirmation Order.

12.     <u>Reservation of Rights of the United States of America</u>. Notwithstanding anything in the Plan, or this Confirmation Order, nothing shall affect or impair (a) any liability or obligation owed by the Debtors or any Non-Debtor to the United States of America, including, without limitation, the U.S. Small Business Administration, the U.S. Social Security Administration, the U.S. Department of Veterans Affairs, the U.S. Department of the Treasury, the U.S. Department of Health and Human Services, and any and all component agencies, including without limitation, the Centers for Medicare & Medicaid Services and the Health Resources and Services Administration; (b) the United States of America's ability or right to pursue claims, collect debts, or enforce police powers or regulatory authority with respect to any Debtor or Non-Debtor; and (c) the United States of America's rights and defenses of recoupment and setoff. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall affect or impair the Rule 9019 Order, and nothing shall affect, impair, enjoin, or divest the jurisdiction or authority of any tribunal or administrative body of the United States of America.

13.     <u>Reservation of Rights of the Texas Comptroller of Public Accounts and the Texas Workforce Commission</u>. Notwithstanding any term in the Plan or this Confirmation Order to the contrary, the Texas Comptroller of Public Accounts' (the "**Comptroller**") and the Texas Workforce Commission's (the "**TWC**") setoff rights are preserved under section 553 of the Bankruptcy Code. Pursuant to Bankruptcy Code section 503(b)(1)(D), neither the Comptroller nor the TWC shall be required to file a request for payment of any amounts coming due post-petition. Post-petition liabilities owed to the Comptroller or the TWC as of the Effective Date shall be paid in full on the Effective Date, and Post-petition liabilities coming due to the Comptroller or the TWC after the Effective Date shall be paid in full when due under and in accordance with state law.

14.     Upon receipt of Debtors' 2021 franchise tax return, the Comptroller may amend its currently-estimated priority tax claim (Claim No. 10) without leave of Court. To the extent the Comptroller's priority tax claim is not paid in full by the Effective Date, it shall be paid with post-Effective Date interest at the rate of 4.25%, via monthly installments to begin on the first day of the month following the Effective Date or the date the claim is Allowed, and continuing on the first day of each month thereafter, so that all payments are complete within five (5) years of the Petition Date.

15.     To the extent the TWC's priority tax claim is not paid in full by the Effective Date, it shall be paid, with post-Effective Date interest at the rate of 4.50%, via monthly installments to begin on the first day of the month following the Effective Date or the date the claim is Allowed, and continuing on the first day of each month thereafter, so that all payments are complete within five (5) years of the Petition Date.

16.     A failure by Debtor/Reorganized Debtor to make a payment to the Comptroller or to the TWC pursuant to the terms of the Plan and/or this Confirmation Order shall be an Event of Default. If Debtor fails to cure such Event of Default within five (5) calendar days of the date a Notice of Default is transmitted to Debtors' counsel, Liz Boydston, Trinitee G. Green, Jeremy Johnson, and Stephen Astringer, via email at lboydston@polsinelli.com, tggreen@polsinelli.com, jeremy.johnson@polsinelli.com, and sastringer@polsinelli.com, and via facsimile transmission to (214) 397-0033, the Comptroller or the TWC may (a) enforce the entire amount of its claim(s), (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court. The Debtor/Reorganized Debtor shall be allowed to cure no more than one Event of Default with the Comptroller; a second Event of Default may not be cured.

17. <u>Reservation of Rights of Governmental Unit</u>. Nothing in this Order or the Plan or related documents discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("**Governmental Unit**") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any such claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

18. Further, nothing in this Order or the Plan or related documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order or the Plan shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or to adjudicate any defense asserted under this Order or the Plan.

19. <u>Discharge</u>. Because the Plan is confirmed under Bankruptcy Code section 1191(a), on the Effective Date of the Plan, the Debtors shall receive a discharge as to any debt that arose before entry of this Confirmation Order in accordance with Bankruptcy Code section 1141(d)(1)(A).

20. <u>Post-Confirmation Business Operations</u>. Debtors are authorized to operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and in all respects as if there were no pending Cases under any chapter or provisions of the Bankruptcy Code. Except as set forth in the Plan concerning objections to Claims, the Debtor may also settle or compromise any Claims without Court approval.

21. <u>Debtors' Authorization</u>. Debtors are hereby authorized and fully empowered to take any and all actions as may be necessary and appropriate to consummate, effectuate, and implement the Plan and all transactions contemplated thereby, including, without limitation, to effectuate or otherwise document the transfer of assets, pursuant to the terms, and subject to the conditions, of the Plan.

22. <u>Rule 9019 Compromise and Settlement</u>. Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, the Settlement described in the Plan and authorized by the Court's Rule 9019 Order is appropriately described and incorporated into the Plan in all respects.

23. <u>Rights of Holders of Allowed Claims</u>. All rights of Holders of Allowed Claims, including, without limitation, the right to receive a Distribution on account of such Claim(s), shall hereinafter be limited solely to the right to receive such Distribution only to the extent and as expressly provided in this Confirmation Order and under the Plan; *provided, however*, that Dallas County asserts it is the Holder of a secured claim for year 2021 ad valorem business personal property taxes of Debtor SCC. Dallas County will receive payment in full of its claim in the ordinary course of business prior to the state law delinquency date. Notwithstanding any other provision in the Plan, in the event that Dallas County receives payment of its claim after January 31, 2022, Dallas County will receive interest on its claim from the Petition Date through the

Effective Date and from the Effective Date through payment in full at the state statutory rate of interest pursuant to Bankruptcy Code sections 506(b), 511 and 1129.

24. <u>Notice of Effective Date and Related Deadlines</u>. Within five (5) business days after the Effective Date, Debtor shall file a notice of occurrence of the Effective Date (the "**Notice of Effective Date**") with the Court and serve it upon all known creditors and parties required to receive notice pursuant to Bankruptcy Rule 2002. The Notice of Effective Date shall further set forth the Rejection Damage Claim Bar Date, Administrative Claim Bar Date, and Professional Fee Claim Bar Date, each as set forth and defined herein.

25. <u>Administrative Claim Bar Date</u>. All parties shall file any and all requests for allowance and payment of administrative expenses incurred on or before the day immediately preceding the Effective Date pursuant to Bankruptcy Code section 503, other than Professional Fee Claims (defined below) (collectively, "**Administrative Claims**") on the first business day that is thirty (30) calendar days after the Effective Date (the "**Administrative Expense Bar Date**"). Administrative Claims filed after the Administrative Expense Bar Date shall be disallowed and forever barred in their entirety.

26. <u>Professional Fee Claim Bar Date</u>. All parties shall file any and all final applications for allowance and payment of fees, costs, and expenses incurred by any estate professionals through and including the day immediately preceding the Effective Date pursuant to Bankruptcy Code sections 330, 331, 503, or 1103 (collectively, "**Professional Fee Claims**") on the first business day that is forty-five (45) calendar days after the Effective Date (the "**Professional Final Fee Application Claims Bar Date**"). Professional Fee Claims filed after the Professional Final Fee Application Claims Bar Date shall be disallowed and forever barred in their entirety.

27.     Re-vesting of Property. Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all of the property of the estate vests in the Debtors. Except as provided in Bankruptcy Code sections 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors; *provided, however*, that Dallas County shall retain the liens that secure all amounts owed to it until it receives payment in full; *provided, further*, that in the event of a default under the Plan, Dallas County shall provide notice to Anthony Arnaudy via e-mail correspondence at aarnaudy@seniorcarecentersltc.com and via U.S. mail to Abri Health Services, LLC, 600 North Pearl Street, Suite 1950, Dallas, Texas 75201 and, thereafter, the Reorganized Debtors shall have fourteen (14) days from the date of notice to cure any such default. For the avoidance of doubt, if the default is not cured, Dallas County shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court.

28.     Modification after Confirmation. Debtors may modify the Plan at any time within the Commitment Period, but such modified plan shall become the Plan only if circumstances warrant and the Court, after notice and a hearing, confirms such proposed modifications under Bankruptcy Code section 1191.

29.     Discharge of Subchapter V Trustee. Pursuant to Bankruptcy Code section 1183, the Subchapter V Trustee shall terminate any and all services with respect to the Debtors and the Cases once the Plan has been substantially consummated. Not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the Subchapter V Trustee, the Office of the United States Trustee, and all parties in interest notice of such substantial consummation.

30.    _Amendments/Headings_. This Confirmation Order may be amended or supplemented only upon further, Final Order of the Court. The headings used herein are for ease of reference only and shall not be used in interpreting this Confirmation Order.

31.    _Retention of Jurisdiction_. Subject to paragraph 12 of this Confirmation Order, notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising in, arising under, or related to these Cases to the fullest extent legally permissible.

32.    _Successors/Assigns_. This Confirmation Order shall be binding upon, and inure to the benefit of, Debtors' successors, designees, assigns, beneficiaries, executors, administrators, and personal representatives.

33.    _Conflicts Between this Confirmation Order and the Plan_. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency the provisions of this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court. For the avoidance of doubt, if there are any inconsistencies between (i) the Rule 9019 Order and Settlement, on one hand; and (ii) the Plan , on the other hand, then the terms of the Rule 9019 Order and Settlement shall control and shall be considered integrated into this Confirmation Order as though set forth herein.

34.    _Finality and Immediate Effect of Confirmation Order_. This Confirmation Order (i) is a Final Order and the period in which an appeal must be filed shall commence upon the entry

hereof; and (ii) notwithstanding the applicability Bankruptcy Rule 3020(e), shall be immediately effective and enforceable upon the entry hereof. The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan.

35.     _Notice_. Within five (5) business days of the entry of this Confirmation Order, Debtors shall transmit a copy of this Confirmation Order via first class mail with postage prepaid to all of its known creditors and parties-in-interest. Such notice shall be adequate under the circumstances and shall be sufficient to meet the requirements necessary for due process and Bankruptcy Rule 2002(f)(7).

36.     The Reorganized Debtors will file post-confirmation distribution reports within forty-five (45) days of making any Distribution under the Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

80471185.1

**<u>Exhibit 1</u>**

**Amended Subchapter V Plan of Reorganization**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  | § |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| Abri Health Services, LLC, *et al.*,[1] | § | Case No. 21-30700 (SGJ) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |

## SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION

Liz Boydston (SBN 24053684)
Trinitee G. Green (SBN 24081320)
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
lboydston@polsinelli.com
tggreen@polsinelli.com

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
Stephen J. Astringer (Admitted *Pro Hac Vice*)
Polsinelli PC
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com
sastringer@polsinelli.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

Dated: October 22, 2021

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Abri Health Services, LLC (3319) and Senior Care Centers, LLC (8550).

## I. Plan and Confirmation Requirements

To confirm a plan under Bankruptcy Code section 1191, whether the plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtors' filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, the Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by the Plan. Additionally, the Plan must include: (a) a brief history of the business operations of the Debtors; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under the Plan. *See* 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A. Brief History of the Business Operations of the Debtor

Senior Care Centers, LLC ("SCC") was formed in 2008 and commenced operations as a licensed operator of skilled nursing facilities in 2009. Between 2009 and 2018, SCC expanded operations to become one of the largest providers of skilled nursing services in the country and the largest skilled nursing facility operator in Texas. As of December 4, 2018, SCC operated 97 skilled nursing facilities, 9 assisted living facilities, and 6 hospice facilities; provided daily care to approximately 9,000 patients; had a capacity of nearly 13,000 beds; and employed more than 11,000 individuals.

On December 4, 2018, SCC and more than 100 Affiliates filed for relief under Chapter 11 of the Bankruptcy Code and those cases were jointly administered under lead Bankruptcy Case No. 18-33967 (the "Prior Case"). SCC eventually emerged from bankruptcy on March 27, 2020 with its Affiliates operating 22 skilled nursing facilities and one assisted living facility. Among these facilities were the 11 TXMS Facilities.

Following SCC's emergence from bankruptcy, Abri Health Services, LLC ("Abri") became SCC's sole member and the company rebranded under the Abri name. Immediately following SCC's exit from bankruptcy, TXMS engaged in litigation with the Debtors. During the same time, the COVID-19 pandemic devastated the country, and in particular, the senior living space. Abri was able to obtain lease concessions from some of the Debtors' landlords, but nothing from TXMS. As set forth in more detail in the First Day Declaration, the Debtors and TXMS began negotiations as to a potential transfer of the TXMS Facilities to a new operator. The Debtors would only agree to such a transaction upon the execution of a landlord settlement agreement and OTAs on certain terms and in exchange for fair consideration. While these negotiations were ongoing,

TXMS sent the Debtors a Notice of Termination and demanded that the Debtors execute entirely new OTAs that provided for, among other things, no consideration to the Debtors and required that the Debtors indemnify the new operator and make various guaranties. The Debtors requested that TXMS withdraw the Notice of Termination so that negotiations could continue. When TXMS did not, the Debtors filed the Subchapter V Cases on April 16, 2021 (the "Petition Date).

Following the Petition Date, through arms-length negotiations and significant effort, the Debtors were ultimately able to resolve their disputes with TXMS and reached an agreement, the terms of which are expressly set forth in that certain Compromise and Release Agreement, dated August 24, 2021, which the Court approved in its Order (I) Approving Settlement Agreement, (II) Authorizing the Debtors to Consummate the Settlement, Execute Transaction Documents, and Perform Obligations of the Settlement, and (III) Granting Related Relief (the "Rule 9019 Order"), dated August 31, 2021. *See* Docket No. 194.

In summary form, the Settlement Agreement includes, among other things, in exchange for the Debtors' transfer of operations of the TXMS Facilities to the Winnie-Stowell Hospital District (the "Hospital District"):

- TXMS agrees to fund a $500,000 Indemnification Escrow, which shall be the source of recovery for certain breaches of the terms of the Settlement Transaction Documents; and any funds remaining upon termination of the Escrow Period shall be split evenly between the Debtors and TXMS.

- Hospital District to assume the Medicare Provider Agreements of each of the Debtors' subsidiary operating entities that operate the TXMS Facilities (the "Operators").

- Hospital District to assume liability of up to $3,700,000 of the remaining Medicare Advance Payment Liability of the Operators.

- TXMS or LTC shall pay $3,250,000 million to the Operators.

- TXMS or Hospital District shall be responsible for payment of all ad valorem real property taxes related to the TXMS Facilities for the 2021 tax year and thereafter.

- Both TXMS and the Debtors agreed to dismiss with prejudice certain claims pending in that certain adversary proceeding styled *Texas Real Estate Investments, Inc. v. Senior Care Centers, LLC, et. al*, Adversary No. 20-3073, pending in the Bankruptcy Court.

- TXMS agreed to withdraw Claim No. 14 filed in Bankruptcy Case No. 21-30700 and Claim No. 18 filed in Bankruptcy Case No. 21-30701.

- Hospital District or HMG Healthcare, LLC ("Manager") to assume certain operating contracts.

- Hospital District or Manager to assume liability for paid time off (PTO) of all employees of the Operators up to $550,000.

B. **The Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable"**

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with the Debtors' projected Disposable Income over the Commitment Period. The Debtors' total projected Disposable Income for the Commitment Period is $2,989,648.00. Attached hereto as <u>Exhibit A</u> is the Debtors' projected Disposable Income analysis. Additionally, the Debtor's Liquidation Analysis, attached hereto as <u>Exhibit B</u> demonstrates that this Plan is in the best interests of creditors.

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

C. **The Debtors Will Be Able to Make All Distributions Contemplated Under the Plan**

In accordance with Bankruptcy Code sections 1191(c)(3)(A)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash and will have sufficient future earnings to provide regular, annual Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II.    Definitions and Construction of Terms

### A.    Definitions

"*Abri*" means *Abri Health Services, LLC*.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5); and (d) all fees and charges assessed in the Prior Case pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

"*Affiliate*" means an "affiliate," as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the

80367729.3

Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by the Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in the Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Allowed Prior Case Convenience Class Claim*" means any Convenience Class Claim, as that term is defined in the Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code that was confirmed in the Prior Case [Prior Case Docket No. 2053] (the "SCC 1 Plan"), each of which is hereby Allowed in the Subchapter V Cases for purposes of this Plan in an amount equal to the product of (x) the result of (A) the Allowed amount of such Convenience Class Claim in the Prior Case divided by (B) the aggregate amount of all Allowed Convenience Class Claims in the Prior Case.

"*Annaly*" means CHI Javelin, LLC; CHI Javelin Winters Park, LLC; CHI Javelin Denison, LLC; CHI Javelin Frisco, LLC; CHI Javelin Allen, LLC; CHI Javelin Vista Ridge; and any applicable affiliates.

"*Annaly Lease*" means that certain Master Lease Agreement, dated May 11, 2016, as subsequently amended, between Annaly, as lessor, and Abri and other of its affiliates, as lessee.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Board*" means the Debtors' Board of Directors.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, June 25, 2021.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the 3-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under the Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.E.

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.E.

"*Debtors*" means, collectively, Abri and SCC.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof. that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disposable Income*" means Debtors' "disposable income" as defined under Bankruptcy Code section 1191(d).

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property, or other value distributed by the Reorganized Debtors to Holders of Allowed Claims, or their designated agents, under the Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors and Reorganized Debtors and each of their directors, officers, attorneys, investment bankers, accounts, consultants, and other Professionals.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Facilities Leases*" means the Unexpired Leases and all related documents with respect to the Facilities, including but not limited to, as applicable, master leases, subleases, HUD Regulatory Agreements, and guarantees.

"*Facilities*" means the eleven (11) Facilities the Reorganized Debtors and their Affiliates intend to operate.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*First Day Declaration*" means the *Declaration of Kevin O'Halloran, Chief Executive Officer of Abri Health Services, LLC, in Support of Subchapter V of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10].

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, October 13, 2021.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*HMG*" means HMG Healthcare, LLC.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*LTC*" means LTC Properties, Inc., the parent company of TXMS.

"*OTA*" means an operations transfer agreement.

"*Petition Date*" means April 16, 2021, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Second Amended Subchapter V Plan Reorganization*, dated as of October 22, 2021, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means the Plan, the Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to the Plan to be Filed by the Debtors containing substantially final forms of, among other things, the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"*Prior Case*" means Case No. 18-33967, the 2018 Chapter 11 Bankruptcy of SCC and more than 100 Affiliates.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is 45 days after the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Ankura Consulting Group, LLC; Polsinelli PC; and Stretto, Inc.; (b) the individual members of the Debtors' management; and (c) these individual members of the Board: CEO Anthony Arnaudy and Independent Director and Board Chair Monica Blacker.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

"*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be Filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, together with their respective successors and assigns, in each case in their capacity as such.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Ankura Consulting Group, LLC and Polsinelli PC; (b) the individual members of the Debtors' management; and (c) the individual members of the Board.

"*Releasing Parties*" shall mean the Debtor Releasing Parties.

"*Reorganized Debtors*" means the Debtors and any successor thereto after the Effective Date.

"*SCC*" means Senior Care Centers, LLC.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to the Plan.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 21-30700.

"*TXMS*" means TXMS Real Estate Investments, Inc.

"*TXMS Facilities*" means the facilities operated by the TXMS Operators.

"*TXMS Operators*" means the 11 non-Debtor Affiliates that operate the TXMS Facilities: Brownwood SCC LLC, Community SCC LLC, Crowley SCC LLC, Green Oaks SCC LLC, Harbor Lakes SCC LLC, Hewitt SCC LLC, Holland SCC LLC, Mission SCC LLC, Red Oak SCC LLC, Stallings Court SCC LLC, and Stonegate SCC LLC.

"*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim (including, without limitation, Allowed Prior Case Convenience Class Claims) other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

80367729.3

### B. Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

1. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

2. Unless otherwise specified, each section, article, schedule, or exhibit reference in the Plan is to the respective section in, article of, schedule to, or exhibit to the Plan.

3. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

4. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan.

5. A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

6. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

7. Unless otherwise provided, any reference in the Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

8. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III. Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article III of the Plan.

### A. Treatment of Administrative Claims

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, regular payments in Cash, throughout the Commitment Period, totaling not less than the full unpaid amount of such Allowed Administrative Claim.

80367729.3

All requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than 15 days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### B.     Treatment of Professional Fee Claims

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. Allowed Professional Fee Claim shall be paid in regular payments, in Cash, throughout the Commitment Period, with such payments totaling not less than the full unpaid amount of such Allowed Professional Fee Claim, pursuant to Bankruptcy Code section 1191(e); provided, however, that Debtors reserve the right to agree to pay Professional Fee Claims within a reasonable period of time after such Professional Fee Claims are Allowed.

### C.     Priority Tax Claims

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date, (2) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, or (3) over a period ending not later than three (3) years after the applicable Petition Date.

## IV.     Classification and Treatment of Claims and Interests

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted the Plan, confirming the Plan, and the resultant treatment of Claims and Interests and Distributions under the Plan.

14

The Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | 85-100% |
| 4 | Equity Interests | Unimpaired | Deemed to Accept | 100% |

### A.     Classification and Treatment of Claims and Interests

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1)     Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed; (ii) delivery of the Collateral securing such Allowed Secured Claim; (iii) Reinstatement of the Secured Claim; or (iv) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Secured Claim may agree.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

### (2)     Class 2 – Priority Unsecured Claims

*Classification*. Class 2 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment

as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject the Plan.

### (3)     Class 3 – General Unsecured Claims

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of Debtors' projected Disposable Income (as set forth under Exhibit A to this Plan). In accordance therewith, Debtors will make Distributions on account of Allowed General Unsecured Claims as follows:

- Year 2, 2022 to 2023: $200,010 payment no later than November 30, 2023; and

- Year 3, 2023 to 2024: no more than $2,789,637 payment no later than November 30, 2024.[2]

*Voting*. Class 3 is Impaired. Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

### (4)     Class 4 – Interests in Abri

*Classification*. Class 4 consists of all Interests in Abri.

*Treatment*. Holders of Interests in Abri shall retain such Interests.

*Voting*. Class 4 is Unimpaired. Holders of Allowed Interests in Class 4 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f). Holders of Interests are not entitled to vote to accept or reject the Plan.

## V.     Executory Contracts and Unexpired Leases

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the

---

[2] As reflected in Exhibit A, attached hereto, Debtors have no projected disposable income in the first year of the Commitment Period.

Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or Unexpired Lease until the Confirmation Date.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of the Subchapter V Cases or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

The Debtors acknowledge that they are in default of the Annaly Lease due to the inability to meet the Net Worth requirement under Exhibit "I" of the Annaly Lease. Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, including Articles V and VIII of the Plan: (i) the Debtors' obligation to satisfy the Net Worth requirement of the Annaly Lease after the Effective Date is not waived, released, discharged, or satisfied, and remains enforceable; and (ii) Annaly, and any successor to Annaly, retains all rights and remedies with respect to, and is in no way estopped or enjoined from, enforcement of the Net Worth requirement of the Annaly Lease against the Reorganized Debtors, any successors thereto, including any transferee or assignee, or any other third party.

Notwithstanding anything to the contrary in the Plan, all guaranties guarantying obligations and liabilities of a Debtor or a Reorganized Debtor under any of the Facilities Leases shall remain and continue after the Effective Date and shall in no way be impacted or diminished by any provision of the Plan.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed to have been rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the rejections as of the Effective Date. Unless otherwise indicated, all rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.

## B.      Cure of Defaults

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

At least 14 days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by the Debtors at least seven days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C.      Rejection Claims

Any counterparty to a contract or lease which is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must File and serve a Proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than the Rejection Damages Bar Date.

### D.     Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## VI.    Distributions

### A.     Reorganized Debtors to Make Distributions

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtors shall make all Distributions required by the Plan.

### B.     Method of Payment

Unless otherwise expressly agreed in writing, payments of Cash under the Plan shall be made by a check drawn on a domestic bank or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### C.     Objections to and Resolution of Claims

The Reorganized Debtors shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Reorganized Debtors have the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### D.     Claims Objection Deadline

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 180 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### E.     Disputed Claims

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

On any date that Distributions are to be made under the terms of the Plan, the Reorganized Debtors shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each

such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Reorganized Debtors shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

Except as otherwise provided herein, within the later of (i) seven (7) Business Days after a Claim becomes an Allowed Claim and (ii) 30 days after the expiration of the Claims Objection Deadline, the Debtors shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

### F. Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized Debtors, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address.

### G. Undeliverable or Unclaimed Distributions

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 90 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Reorganized Debtors at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Case.

### H. Setoff and Recoupment

From and after the Effective Date, the Reorganized Debtors may, to the extent permitted by Bankruptcy Code section 558 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

### I. No Interest

Unless otherwise explicitly provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

80367729.3

## VII.    Means of Implementation

### A.    General Settlement of Claims

Unless otherwise set forth in the Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

### B.    Plan Funding

The Debtors anticipate that all Distributions made under the Plan will be funded from the Cash on hand and future earnings, which will not be less than 100% of the Debtors' projected Disposable Income for the Commitment Period. However, the Debtors reserve the right to make a lump sum payment during the Commitment Period.

### C.    Continued Corporate Operations

The Reorganized Debtors will continue to operate with the primary purpose of conducting their business of managing their Affiliates' operation of skilled nursing and assisted living facilities in Texas.

### D.    Continued Corporate Existence

Each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date.

### E.    Vesting of Assets

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Subchapter V Cases or under or in connection with the Plan, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized

21

Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### F. Corporate Governance

The Reorganized Debtors will continue to be governed by its manager and Board. On the Effective Date, the Debtors' officers will remain officers of the Reorganized Debtors.

### G. Claims Objections

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 180 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### H. Section 1145 Exemption

In accordance with Bankruptcy Code section 1145, the retention of Interests under the Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII. Effect of Plan Confirmation

### A. Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B. Plan Injunction

**Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to the Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates: (a) commencing or continuing in any manner any action or other proceeding of any kind on**

account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan. Notwithstanding the foregoing, nothing contained in this subparagraph B shall be deemed to impact, modify, or otherwise amend or alter the terms of the Settlement Agreement and the Rule 9019 Order, which remain controlling.

C.    Protected Party Injunction

The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of the Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units. Notwithstanding the foregoing, the releases provided under the Settlement Agreement and the Rule 9019 Order shall supersede any protections, injunctions, or releases provided to any Protected Party under this section.

D.    Exculpation

Notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit

23

of Consummation, the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009), or in contravention of the Rule 9019 Order or Settlement Agreement.

E.     **Releases by the Debtors**

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in the Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of the Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each

of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

Notwithstanding the foregoing, the Debtor Release provided under the Settlement Agreement and the 91019 Order shall supersede any protections, injunctions or releases provided by any Debtor Releasing Party under this section.

F. Release and Exculpation Injunction

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to the Plan. For the avoidance of doubt, any and all claims and/or potential claims of TXMS, LTC Properties, Inc., Winnie-Stowell Hospital District, a governmental entity and political subdivision of the State of Texas and HMG Healthcare, LLC are controlled by the terms and conditions of the pursuant to the Rule 9019 Order and the Settlement Agreement, both of which are incorporated herein.

G. Discharge of Claims

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

(1) Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against,

liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### (2) Cramdown Plan - Discharge Under Bankruptcy Code section 1192

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period] . . . ." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under the Plan.

### H. Retention, Reservation, and Prosecution of Causes of Action

In accordance with Bankruptcy Code section 1123(b) or any corresponding provision of federal or state laws, and except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Causes of Action shall be retained by the Debtors, and the Debtors may, in accordance with the Plan, enforce, sue on, settle, or compromise (or decline to do any of

the foregoing) any or all of such Causes of Action. The Debtors will include in the Plan Supplement a non-exhaustive list of the Causes of Action that will be retained.

Except as otherwise explicitly provided in this Plan, nothing in the Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estate may have or choose to assert on behalf of the Debtors or their Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. No entity may rely on the absence of a specific reference in the Plan to any Cause of Action or account receivable against it as an indication that the Debtors will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of the Plan.

Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization, or other action by such stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors or notice to, order of, or hearing before the Bankruptcy Court.

## IX. Conditions Precedent to Effective Date

### A. Conditions Precedent to Effective Date

The following is a list of the conditions precedent to the Effective Date of the Plan:

1. the Confirmation Order shall have been entered by the Bankruptcy Court confirming the Plan in form and substance acceptable to the Debtors, and such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2. all governmental and material third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall be in full force and effect (which, in the case of an order of judgment of any Court, shall mean a Final Order), and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

3. TXMS shall withdraw any and all proofs of claim filed in the Subchapter V cases, pursuant to the Court's Rule 9019 Order, which shall include, without limitation, Claim No. 14 filed in Case No. 21-30700 and Claim No. 18 filed in Case No. 21-30701; and

80367729.3

4.     all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

## B.    Waiver of Conditions Precedent

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

## C.    Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## X.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Cases for, among other things, the following purposes:

1.     to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

2.     to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

3.     to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the

resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests

4.      to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

6.      to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7.      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8.      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9.      to issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

10.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.      to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12.      to determine any other matters that may arise in connection with or are related to the Plan, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan or the Plan Supplement;

13.      to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

14.    to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

15.    to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

16.    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17.    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

18.    to hear any other matter related to the Plan and not inconsistent with the Bankruptcy Code; and

19.    to enter a Final Decree closing the Subchapter V Cases.

## XI.    Miscellaneous Provisions

### A.    Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that the Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify the Plan at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.    Plan Supplement

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement Filed from time to time. Unless otherwise expressly provided in the Plan, the Debtors may File any Plan Supplement until ten (10) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance the Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Bankruptcy Court's Website.

### C.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further

80367729.3

evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D. Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E. Time

To the extent that any time for the occurrence or happening of an event as set forth in the Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### F. Severability

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G. Revocation

The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### H. Reservation of Rights

The Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Plan Supplement

shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### I.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### J.     Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors/Reorganized Debtors | Abri Health Services, LLC<br>600 North Pearl Street, Suite 1950<br>Dallas, Texas 75201<br>Attention: Anthony Arnaudy<br>aarnaudy@seniorcarecentersltc.com<br>Attention: Kevin O'Halloran<br>kevin.ohalloran@abrihs.com |
| Counsel to Debtors | Polsinelli PC<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Attention: Liz Boydston<br>lboydston@polsinelli.com<br><br>Polsinelli PC<br>600 3rd Avenue, 42nd Floor<br>New York, New York 10016<br>Attention: Jeremy R. Johnson<br>jeremy.johnson@polsinelli.com |
| United States Trustee | Office of the United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Meredyth A. Kippes<br>meredyth.a.kippes@usdoj.gov |

80367729.3

| Subchapter V Trustee | Office of Mark A. Weisbart |
| | 12770 Coit Road, Suite 541 |
| | Dallas, Texas 75251 |
| | Attention: Mark A. Weisbart |
| | Mark@weisbartlaw.net |

### K.   Entire Agreement

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan on the Effective Date.

### L.   Inconsistency

To the extent the Confirmation Order and/or the Plan is inconsistent with any other agreement entered into between the Debtors and any third party, the Plan shall control any previous agreements and the Confirmation Order shall control the Plan.

### M.   Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors, the Reorganized Debtors, and each of their Related Parties shall be entitled to, and upon the Confirmation Date will be granted, the protections of Bankruptcy Code section 1125(e).

### N.   Default

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtors/Reorganized Debtors are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtors and Counsel to the Debtors prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

### O.   Post-Confirmation Distribution Reports

The Reorganized Debtors will file post-confirmation distribution reports within 45 days of making any Distribution under the Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

80367729.3

Executed this 22nd day of October, 2021.       */s/ Kevin O'Halloran*
Dallas, Texas

Kevin O'Halloran
Chief Executive Officer
Abri Health Services, LLC

**Exhibit A**

Projected Disposable Income

| | Projections | |
|---|---|---|
| | **Forecasted Consolidated ABRI** | |
| | **For the Thirty Six Months Ending October 2023** | |
| | **Year 1** | **Year 2** | **Year 3** |
| Occupancy % | 68.23% | 75.02% | 76.90% |
| **Revenue** | | | |
| **Total Patient Revenue** | **86,519,554** | **94,748,821** | **98,119,495** |
| **Total Other Revenue** | **7,082,937** | **10,690,650** | **10,913,407** |
| **Total Revenue** | **93,602,491** | **105,439,470** | **109,032,902** |
| | | | |
| **Operating Expenses** | | | |
| Total Nursing | 30,944,921 | 34,361,442 | 35,929,390 |
| Total Consultants | 394,802 | 403,685 | 412,768 |
| Total Training | 150,386 | 147,222 | 150,521 |
| Total Social Services & Activities | 1,248,661 | 1,276,756 | 1,305,483 |
| Total Ancillaries | 12,209,074 | 13,796,826 | 14,452,217 |
| Total Laundry & Housekeeping | 2,520,536 | 2,577,248 | 2,635,236 |
| Total Dietary | 5,791,581 | 6,239,555 | 6,446,018 |
| Total Building & Equipment | 1,858,924 | 1,899,299 | 1,940,582 |
| Total Operation & Maintenance | 4,099,023 | 4,173,942 | 4,258,661 |
| Total Rehab Labor | 1,875,380 | 1,917,576 | 2,004,838 |
| Total Administrative | 16,605,262 | 16,545,032 | 16,778,072 |
| Total Uncollectable | 1,762,643 | 1,970,311 | 2,071,160 |
| Total Management Fee (5%) | 4,332,422 | 4,794,682 | 5,017,439 |
| Total Workers Comp & Employee Benefits | 135,962 | 138,865 | 141,833 |
| **Total Operating Expense** | **83,929,577** | **90,242,440** | **93,544,217** |
| | | | |
| **EBITDAR** | **9,672,914** | **15,197,031** | **15,488,685** |
| **EBITDA** | **(2,472,204)** | **2,705,510** | **2,747,334** |
| **Total Non-Operating Expense** | **1,246,692** | **1,246,692** | **1,246,692** |
| **Net Income** | **(3,718,896)** | **1,458,818** | **1,500,642** |
| | | | |
| **Cash Flow** | | | |
| EBITDA | (2,472,204) | 2,705,510 | 2,747,334 |
| Interest | (180,000) | (210,000) | (210,000) |
| Taxes | (375,000) | (375,000) | (375,000) |
| CAPEX | (600,000) | (613,500) | 627,304 |
| AMP Recoupment | (2,521,057) | | |
| ABL Borrowing Line | 3,000,000 | 500,000 | |
| 2020 Deferred Payroll Tax Payment | (1,807,000) | (1,807,000) | |
| **Net Cash Flow** | **(4,955,261)** | **200,010** | **2,789,637** |
| AR LTC (net, collected during 1 year after transition date ) | 5,900,000 | | |
| AP LTC | (3,000,000) | | |
| LTC Payment | 3,250,000 | | |
| **Cash Flow available to Admins and Unsecured Creditors** | **1,194,739** | **200,010** | **2,789,637** |
| UST Ch11 Admin Fees | (100,000) | | |
| Chapter 5 Trustee fee | (60,000) | | |
| Professional Fees Chapter 5 | **(1,307,000)** | | |
| **Cash Flow available to Unsecured Creditors** | **(272,261)** | **200,010** | **2,789,637** |

**Exhibit B**

Liquidation Analysis

**Liquidation Analysis**

Debtors' Estimated Liquidation Value of Assets

| | Current Value | Estimated Liquidation Value |
|---|---|---|
| **Cash & Cash Equivalents** | $1,101,184.00 | $1,101,184.00 |
| **Deposits & Prepayments** | | |
| LOC Annaly | $750,000.00 | $0.00 |
| LOC Daily Pay | $600,000.00 | $500,000.00 |
| Deposit Constellation Energy | $250,000.00 | $90,000.00 |
| **Stock/Equity in Subsidiary Entities** | Unknown | $500,000.00 |
| **Trademarks & Domain Name** | $0.00 | $0.00 |
| **Accounts Receivable** | None | $0.00 |
| **Inventory** | None | $0.00 |
| **Office Equipment & Equipment** | None | $0.00 |
| **Automobiles** | None | $0.00 |
| **Buildings & Land** | None | $0.00 |
| **Lawsuits/Avoidance Actions** | None | $0.00 |
| | | |
| **Total Assets at Liquidation Value** | | $2,191,184.00 |

| | |
|---|---|
| **Less Secured Creditor Recoveries** | $0.00 |
| **Less Administrative Expenses of the Debtors' Subchapter V Case** | |
| Estimated Debtors' Counsel Fees & Expenses | $957,000.00 |
| Estimated Valuation Expert Fees & Expenses | $330,000.00 |
| Estimated Subchapter V Trustee Fees & Expenses | $60,000.00 |
| Estimated Plan Solicitation Agent Fees & Expenses incurred on 9/24/21 | $44,000.00 |
| Estimated Tax Advisor Fees & Expenses | $50,000.00 |
| **Less Allowed Administrative Expenses of SCC I Case** | |
| Estimated Unpaid US Trustee Fees from SCC I Case | $100,000.00 |
| **Less Estimated Ch. 7 Trustee, Investment Banker & Counsel Fees** | $175,000.00 |
| | |
| **Total Secured, Admin, Priority & Liquidation Costs** | $1,716,000.00 |

| | |
|---|---|
| **Total Assets at Liquidation Value** | $2,191,184.00 |
| **Less Total Secured, Admin, Priority & Liquidation Costs** | $1,716,000.00 |
| | |
| **Balance Remaining for Unsecured Creditors** | $435,184.00 |
| | |
| **Estimated Unsecured Creditors Claims Pool After Expected Objections** | $3,078,061.00 |
| **Estimated Percentage Recovery to Unsecured Creditors in Liquidation** | 14% |
| **Estimated Percentage Recovery to Unsecured Creditors Under Amended Plan** | 85-100% |

**Exhibit C**

Plan Supplement: Debtors' Schedule of Rejected Contracts and Unexpired Leases

## DEBTORS' SCHEDULE OF REJECTED CONTRACTS AND UNEXPIRED LEASES

| Counterparty | Address | Contract or Lease | Rejecting Debtor |
|---|---|---|---|
| American Healthtech | 547 Highland Colony Pkwy., Suite 200 Ridgeland, MS 39157 | Contract | Senior Care Centers, LLC |
| Brownwood SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| CenturyLink | BAC Colonnade Office Tower 2333 Ponce de Leon Blvd., Suite 900 Coral Gables, FL 33134 | Contract | Senior Care Centers, LLC |
| Community SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Crowley SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Green Oaks SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Harbor Lakes SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Healthcare Services Group | 3220 Tillman Dr. Glenview Corporate Center, Suite 300 Bensalem, PA 19020 | Contracts for Dietary, Food, and Housekeeping Services | Senior Care Centers, LLC |
| Hewitt SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Holland Lake SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Mission SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Redoak SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Stallings Court SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Stonegate SCC LLC | 600 N. Pearl St., Suite 1050 Dallas, TX 75201 | Sublease | Senior Care Centers, LLC |
| Tech Dogs | P.O. Box 95498 Grapevine, TX 76099 | Contract | Senior Care Centers, LLC |

80367729.3